UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BREMER,<br>   Plaintiff,<br><br>  v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br>   Defendants. | Case No. 15-cv-01895-JSC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 33 |

Plaintiff William Bremer, individually and as successor in interest to the Estate of David Bremer, filed this civil rights action alleging violations of state and federal law arising from his son's suicide while being held as a pretrial detainee at the Martinez Detention Facility. Plaintiff brings this action against the County of Contra Costa, the Contra Costa County Sheriff's Department, Sheriff's Deputies Chris Spadaro, Donovan Hays, and Curtis Codey (together, the "County Defendants"), as well as the City of Walnut Creek (the "City"), and the Walnut Creek Police Department (together, the "City Defendants" and collectively, "Defendants"). The County Defendants have answered the First Amended Complaint ("FAC"). Now pending before the Court is the motion to dismiss filed by the City Defendants. (Dkt. No. 33.) The Court finds the motion suitable for disposition without oral argument. *See* N.D. Cal. L.R. 7-1(b). Having reviewed the parties' submissions and the relevant legal authority, the Court GRANTS the motion.

**FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

This action arises out of the death of Plaintiff's son, David Bremer ("David Bremer" or the "decedent") on March 20, 2014, while he was being held as a pretrial detainee at the Martinez Detention Facility in Contra Costa County following his arrest by the Walnut Creek Police Department. (Dkt. No. 32 ¶ 18.) Contra Costa County and the Contra Costa County Sheriff's

1   Department operate the Martinez Detention Facility.  (*Id.* ¶ 9.)

2     During the early morning hours of March 20, 2014, Walnut Creek police officers arrested
3   the decedent, a mentally ill man in need of psychiatric care, on an outstanding warrant.  (*Id.* ¶¶ 5,
4   19.)  The decedent attempted to evade arrest by running away from the officers and otherwise
5   resisting arrest but the officers ultimately apprehended him using excessive and unnecessary force.
6   (*Id.* ¶ 19.)  Walnut Creek police officers then transported the decedent to the Martinez Detention
7   Facility to await arraignment on the warrant.  (*Id.* ¶ 20.)  During that time, the officers failed to
8   identify and address the decedent's deteriorating mental health.  (*Id.*)

9     Decedent was interviewed at the Martinez Detention Facility, and he told the intake nurse
10  that he might injure himself.  (*Id.* ¶ 21.)  "Consequently, he was determined to be suicidal."  (*Id.*)
11  The decedent needed a mental health evaluation, treatment, and placement in an appropriate
12  mental health facility, but no such measures were sought or provided.  (*Id.* ¶ 22.)  Contra Costa
13  County's policy on suicidal detainees instead required correctional staff to place suicidal detainees
14  in "safety cells," to observe and interact with them every 15 minutes, and to record their
15  observations in a log.  (*Id.*)  In accordance with this policy, Defendant Codey placed the decedent
16  in a "safety smock" inside a "safety cell" and began an observation log.  (*Id.* ¶ 23.)

17    At 3:30 a.m., Defendant Codey fed the decedent a bologna sandwich and a carton of milk.
18  (*Id.* ¶ 24.)  Defendant Codey last interacted with the decedent at 4:55 a.m.  (*Id.*)  Defendant Hays
19  observed the decedent in the safety cell at 6:20 a.m. and 6:35 a.m., standing at the door and pacing
20  around the cell.  (*Id.* ¶ 25.)  Defendant Spadaro observed and spoke with the decedent at 6:48 a.m.
21  (*Id.* ¶ 26.)  Defendant Hays observed the decedent in the cell sitting and alert at 7:16 a.m., then
22  again resting on his side at 7:31 a.m., but did not speak with him on either occasion.  (*Id.* ¶ 27.)
23  Defendant Spadaro then observed the decedent at 7:34 a.m. lying in his safety cell facedown and
24  unresponsive.  (*Id.* ¶ 28.)  Defendant Spadaro attempted to resuscitate the decedent and called for
25  emergency medical personnel.  (*Id.*)  The decedent died in the back of an ambulance en route to
26  the Contra Costa County Regional Medical Center.  (*Id.* ¶ 29.)  A large quantity of bread was
27  removed from the decedent's throat during the unsuccessful attempts to revive him.  (*Id.*)  The
28  County coroner performed an autopsy the next day and determined that the decedent had died

from asphyxia—*i.e.*, suffocation—due to aspiration of—*i.e.*, choking on—the bread from the bologna sandwich that Defendant Codey provided.  (*Id.* ¶ 30.)  In short: the decedent committed suicide by intentionally aspirating food that the Sheriff's Department provided.  (*Id.* ¶ 18.)

Intentional asphyxiation from aspiration of food is well-documented.  (*Id.* ¶ 31.)  Law enforcement agencies routinely train their corrections personnel, including Defendants here, to avoid giving food to suicidal detainees without closely monitoring them "to ensure they do not force food down their throats in an effort to kill themselves."  (*Id.*)

Following the decedent's death, Plaintiff filed administrative tort claims with the County and the City and "has satisfied all conditions precedent to plaintiff's California state law based claims."  (*Id.* ¶ 3.)  Plaintiff initiated this action on his own behalf and on behalf of decedent's estate on April 48, 2015, then filed the First Amended Complaint ("FAC") on June 12, 2015.  (Dkt. No. 1.)  The FAC includes nine causes of action against various groupings of defendants.

The first two causes of action are brought pursuant to 42 U.S.C. § 1983 against Defendants Spadaro, Hayes, Codey and Doe Defendants.  Plaintiff alleges that Defendants Spadaro, Hays, and Codey are liable to the estate of decedent for violations of decedent's Fourth and Fourteenth Amendment rights by being deliberately indifferent to decedent's mental health needs (*id.* ¶¶ 39-46), and for interfering with Plaintiff and decedent's family relations in violation of the due process clause of the Fourteenth Amendment (*id.* ¶¶ 47-64).  In the third cause of action, Plaintiff contends that all Defendants are liable for negligent wrongful death pursuant to Section 377.60 of the California Code of Civil Procedure.  (*Id.* ¶¶ 55- 63.)

The next three causes of action bring claims of municipal liability under Section 1983.  In the fourth, Plaintiff alleges that the City of Walnut Creek and Walnut Creek Police Department are liable for violating the decedent's civil rights through a policy that resulted in deliberate indifference to the decedent's medical needs and using excessive force in effecting his arrest.  (*Id.* ¶¶ 64-70.)  In the fifth, Plaintiff alleges that Contra Costa County and the Contra Costa County Sheriff's Department are liable for having a policy that resulted in deliberate indifference to the decedent's need for medical treatment.  (*Id.* ¶¶ 71-78.)  The sixth cause of action alleges that the County and the Sheriff's Department are subject to municipal liability for failing to train

1   employees at the Martinez Detention Facility regarding how to care for and protect detainees with
2   mental health problems.  (*Id.* ¶¶ 79-81.)

3   The seventh cause of action is for general negligence against all Defendants.  (*Id.* ¶¶ 82-
4   91.)  The eighth is for medical negligence against the County Defendants only.  (*Id.* ¶¶ 92-94.)
5   The final cause of action alleges that all Defendants are liable under California Government Code
6   Section 845.6, which imposes a duty to monitor persons in their custody and provide necessary
7   medical and mental health care.  (*Id.* ¶¶ 95-98.)  Plaintiff seeks monetary damages, including
8   punitive damages, funeral and burial expenses, and attorneys' fees and costs.  (*Id.* at 18.)

9   The County Defendants answered the FAC, while the City Defendants filed the instant
10  motion to dismiss, contending that the FAC fails to state a claim upon which relief can be granted
11  against the City Defendants.  (Dkt. Nos. 33, 36.)

## LEGAL STANDARD

13  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege
14  "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*
15  *Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability
16  requirement" but mandates "more than a sheer possibility that a defendant has acted
17  unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations
18  omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual
19  allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the
20  non-moving party."  *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.
21  2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of
22  sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare*
23  *Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see*
24  *also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a
25  claim on the basis of a dispositive issue of law").

26  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under
27  which a party is only required to make "a short and plain statement of the claim showing that the
28  pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

4

recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

### I. Claims Against the Walnut Creek Police Department

Plaintiff brings municipal liability claims against the Walnut Creek Police Department. The proper defendant for such a claim is the municipality itself—here, the City of Walnut Creek—not its sub-agencies or departments. *See Walsh v. Am. Med. Response*, No. 2:13-cv-2077 MCE KJN (PS), 2014 WL 2109946, at *9 (E.D. Cal. May 20, 2014) (noting that the police department is not a municipality, but rather a municipal department or subdivision of the city, and therefore claims against the police department should be dismissed); *Alston v. Tassone*, No. CIV S-11-2078 JAM GGH PS, 2012 WL 2377015, at *3 (E.D. Cal. June 22, 2012), *report & recommendation adopted by* 2012 WL 3070689 (July 27, 2012) (noting that the police department "cannot be held liable for damages separate from the" municipality, so it should be "dismissed with prejudice . . . as an improper party"); *see also Vance v. Cnty. of Santa Clara*, 928 F. Supp. 2d 993, 996 (N.D. Cal. 1996) (noting that the county is the proper defendant in a Section 1983 municipal liability claim, not the sheriff's office).

The same is not true for the state law statutory tort claims. Municipal police departments are 'public entities' under California law and therefore can be sued in federal court. *See Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 (9th Cir. 1987); *see also Richardson v. Benicia Police Dep't*, No. 2:12-cv-1931 FEB AC PS, 2013 WL 5554211, at *4 (E.D. Cal. Oct. 8, 2013) (noting that the local police department is a subdivision of a local public entity). Nonetheless, because the Walnut Creek Police Department is a subdivision of the City itself, and not a separate legal entity, the Court will refer to the remaining claims against the Police Department as claims against the "City" generally.

## II.  Claims Against the City of Walnut Creek

The City contends that all four of the causes of action brought against it must be dismissed for failure to state a claim upon which relief may be granted. In addition, the City insists that the request for attorneys' fees pursuant to Section 1988 for the state law claims must be stricken. The Court will address each challenge in turn.

### A.  Third Cause of Action: Wrongful Death

Plaintiff's third cause of action against all Defendants alleges negligent wrongful death pursuant to Section 377.60 of the California Code of Civil Procedure. The City contends that this cause of action must be dismissed because (1) Plaintiff has not adequately alleged compliance with the exhaustion requirements of the Tort Claims Act, (2) Plaintiff fails to identify a statutory basis for the City's direct liability, and (3) the FAC otherwise fails to state a claim.

#### 1.  *Compliance with the California Tort Claims Act*

California law imposes certain exhaustion requirements before a plaintiff can bring suit against a public entity for money damages. Specifically, the California Tort Claims Act ("CTCA") provides that "no suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board[.]" Cal. Gov't Code § 945.4. The "board" is the governing body of a local public entity, including a city or county. *Id.* §§ 900.2, 900.4. The board must grant or deny a claim within 45 days after it is presented or the claim is deemed rejected. *Id.* § 912.4.

Under Section 945.6, if the board delivers written notice of its decision to the complainant, the complainant has 6 months to file a civil suit, or, if the board does not provide written notice, the complainant has 2 years from the accrual of the cause of action to file suit. *Id.* § 945.6. These timing requirements function as a statute of limitations on state law claims subject to the CTCA. *See Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). The "requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court." *Dowell v. Contra Costa Cnty.*, 928 F. Supp. 2d 1137, 1151 (N.D. Cal. 2013) (citation omitted). Put another way, failure to allege facts demonstrating, or excusing, compliance with the CTCA's claims presentation requirements warrants dismissal of a cause of action. *State of Cal. v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1238-38 (2004).

Here, Plaintiff alleges that he "filed administrative tort claims with the County of Contra Costa and City of Walnut Creek and has satisfied all conditions precedent to plaintiff's California state law based claims." (Dkt. No. 32 ¶ 3.) Aside from this assertion, the FAC contains no facts regarding the timing of his initial written claim to the board or whether and when the board delivered written notice of its decision. Such pleading is insufficient to demonstrate compliance with the CTCA. *See, e.g.*, *Dowell*, 928 F. Supp. 2d at 1152 (dismissing state tort claim for failure to plead facts regarding "whether and when" the board delivered written notice of a claim); *Nnachi v. City & Cnty. of San Francisco*, No. 13-cv-05582-KAW, 2015 WL 1743454, at *6 (N.D. Cal. Apr. 16, 2015) (dismissing state tort claim for failure to plead facts regarding "when he submitted such a claim, what he stated in that claim, and when the City denied it").

Without citing any authority, Plaintiff avers that his conclusory paragraph alleging compliance with "all conditions precedent" to filing state law claims is sufficient. (Dkt. No. 39 at 5.) But the case law compels the opposite conclusion. Thus, the FAC does not adequately allege compliance with the CTCA and the wrongful death claim must be dismissed on this ground.

      2.  *Statutory Basis for Direct Liability*

The City next moves to dismiss the wrongful death claim on the grounds that Plaintiff has not pled a specific statutory basis for direct liability against this public entity, as the California Government Code requires. Indeed, Section 815 provides that public entities are not generally

liable for injuries caused by their employees, unless otherwise provided by statute. Cal. Gov't Code § 815; *see also Mahach-Watkins v. Depee*, No. C 05-1143 SI, 2005 WL 1656887, at *2 (N.D. Cal. July 11, 2005) ("[Section 815] establishes that all governmental tort liability must be based on statute, and California courts have held that plaintiffs must plead the statutory basis for liability.").

Here, Plaintiff identifies Government Code § 815.2 as the basis for the City's liability. (Dkt. No. 32 ¶ 62.) Section 815.2 provides that public entities are liable for injuries caused by their employees acting within the scope of their employment "if the act or omission would, apart from this section, have given rise to a cause of action against that employee." Cal. Gov't Code § 815.2; *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California . . . imposes liability on [public entities] under the doctrine of respondeat superior for acts of county employees; it grants immunity to [public entities] only where the public employee would also be immune.") (citation omitted); *Scott v. Cnty. of Los Angeles*, 27 Cal. App. 4th 125, 139-40 (1994) ("Under [Section 815.2(b), the [public entity] is immune from liability if, and only if, [the employee] is immune.") (emphasis omitted). The City does not dispute that it could be liable for the actions of its officers under a theory of vicarious liability pursuant to Section 815.2(a); to that end, the FAC properly alleges that the officers were employed by the city acting within the scope of their employment and makes clear that it brings claims against the City pursuant to Section 815.2 based on the acts of its officers. (Dkt. No. 32 ¶ 62.)

But the City insists that the FAC alleges direct liability. And indeed, Plaintiff also alleges that the "negligent and reckless acts and omissions of all . . . defendants" caused decedent's injuries, which appears to allege direct liability. (*Id.* ¶ 59.) Plaintiff appears to concede that he has only alleged a statutory basis for the City's *vicarious* liability, not direct. (*See* Dkt. No. 39 at 5.) In fact, in his opposition Plaintiff does not identify a statutory basis for the City's direct liability and nowhere argues that there is such a basis. Thus, the wrongful death count against the City may therefore proceed—if it is adequately pleaded—only on a theory of vicarious liability.

      3. *Sufficiency of Factual Allegations*

Turning to whether the FAC alleges facts that would make the individual officers liable—

8

and thus, whether there is an adequately pleaded basis for the City's vicarious liability—California Code of Civil Procedure Section 377.60 provides a cause of action for wrongful death caused by the "wrongful act or neglect of another[.]" The elements of a wrongful death claim under California law are: (1) a "wrongful act or neglect" on the part of one or more persons that (2) causes (3) the death of another person." *Mathews v. City of Oakland Police Dep't*, No. 12-cv-03235-JCS, 2013 WL 6057689, at *18 (N.D. Cal. Nov. 14, 2013) (citations omitted); *see also Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1264 (2006) ("The elements of a cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."). Here, Plaintiff's wrongful death claim against the City is premised on the officers' negligence. (*See* Dkt. No. 32 ¶¶ 57, 59.) To support a claim of negligent wrongful death against law enforcement officers, a plaintiff must establish the standard elements of negligence: defendants owed a duty of care; defendants breached their duty; and defendants' breach caused plaintiff's injury." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1231 (9th Cir. 2013) (citing *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 344 (1990)).

The basis of Plaintiff's wrongful death claim against the City is that all Defendants, including the City, had a duty to protect and provide service and protection in a professional manner" to the decedent. (Dkt. No. 39 ¶ 59.) In the face of that alleged duty, Plaintiff alleges that Walnut Creek police officers "used excessive and unnecessary force in securing the arrest of David Bremer" after "[h]e attempted to evade arrest by running away from the officers and otherwise resisting arrest[,]" and also "failed to identify and address David Bremer's deteriorating mental health" when they transported him to the Martinez Detention Facility. (Dkt. No. 39 ¶¶ 19-20; *see also id.* ¶ 58 (alleging that the City and Walnut Creek police "used excessive and unnecessary force in securing [Bremer's] arrest").) This conduct "deprived [decedent] of his Constitutional right to life, his Constitutional right to mental health care for his mental illness, as well as custodial care and supervision" and deprived Plaintiff of the care, protection, companionship, love, solace, affection, and moral support of his loved one[.]" (*Id.* ¶¶ 34, 36.)

The Court views the claim as alleging two bases for negligent wrongful death: first, the

excessive force claim; and second, the failure to identify and address the decedent's mental health issues. With respect to the excessive force claim, "a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct." *Arres v. City of Fresno*, No. CV F 10-1628 LJO SMS, 2011 WL 284971, at *24 (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 215 (1991)). But to the extent that the arresting officers owed such a duty, Plaintiff has not alleged sufficient facts to demonstrate a breach—*i.e.*, that they used a level of force that was unreasonable given the totality of the circumstances. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (noting that an excessive force inquiry requires examination of the totality of the circumstances). The conclusory allegation that they did so is not enough to satisfy the pleading standards set forth in *Twombly* and *Iqbal*. Nor does the FAC allege facts sufficient to plausibly establish that any such exercise of excessive force was the proximate cause of Plaintiff's death. Proximate cause has two aspects: but-for causation, on the one hand, and public policy considerations that "limit an actor's responsibility for the consequences of his conduct." *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015). To establish proximate cause between negligent conduct and a suicide, the plaintiff must show that the defendant's negligence caused the suicidal person to suffer an "uncontrollable impulse to commit suicide." *Corales v. Bennett*, 567 F.3d 554, 573 (9th Cir. 2009). No such facts are included in the FAC. Thus, Plaintiff has not sufficiently alleged that any use of excessive force—if it were sufficiently pled—was the proximate cause of Plaintiff's death.

With respect to failure to identify and address mental health issues, the FAC is likewise deficient of facts sufficient to establish the existence of a legal duty, a breach, or proximate cause. The FAC includes the bare allegation that the Walnut Creek police officers "failed to identify and address" the decedent's deteriorating mental health. Even assuming that arresting officers and officers who transport an arrestee to a detention facility owe a duty to exercise due care, there are no factual allegations that indicate that the decedent demonstrated signs of mental health deterioration that would have put a reasonable officer on notice, triggering any duty to obtain mental health treatment for the decedent or notify others of his condition. Even if there were, the FAC likewise fails to include facts that would plausibly establish proximate cause. To the

contrary, the FAC alleges that the decedent actually notified individuals at the Martinez Detention Facility that he was going to harm himself, which caused the facility to place him in a safety cell due to a suicide risk. The FAC does not include any facts that suggest how the Walnut Creek officers' failure to alert the facility of such a risk would have changed the outcome. Thus, the FAC fails to state a claim of wrongful death against the City based on vicarious liability for the arresting officers' negligence in addressing Plaintiff's mental health condition.

Plaintiff's opposition merely recites the relevant—and conclusory—allegations in the FAC and states without support that the required elements are "thoroughly stated." (Dkt. No. 39 at 7.) But mere recitation of a cause of action's elements, absent facts to support the allegations, is not enough to state a claim.

While the City further argues that it is not liable because the officers are protected by a statutory privilege and thus are immune from liability, *see Gilmore v. Super. Ct.*, 230 Cal. App. 3d 416, 421 (1991) ("A privileged act is by definition one for which the actor is absolved of any tort liability, whether premised on the theory of negligence or of intent.") (citations omitted), the Court disagrees. The City relies on Government Code § 856(a)(1), which prohibits liability for public entities or employees acting within the scope of their employment for injuries resulting from determining "whether to confine a person for mental illness[.]" Cal. Gov't Code § 856(a)(1). But this provision is inapposite, as it "applies only to detentions, or decisions made in the process of detention, which are made . . . in accordance with section 5150 of the California Welfare & Institutions Code." *Hall v. City of Fremont*, 510 F. App'x 609, 612 (9th Cir. 2013). There are no facts alleged in the FAC that indicate that such was the case here. The City also concludes without support that the City is also "immune from its officers' discretionary decisions under Gov't Code §§ 815.2 and 820.2." (Dkt. No. 33 at 14. n.4.) But Section 820.2 is limited to "basic policy decisions," not "operational decision[s] by the police" in the context of an arrest. *Liberal v. Estrada*, 632 F.3d 1064, 1085 (9th Cir. 2011) (citing *Gillian v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007)). And where these statutes do not provide immunity to individual officers, they likewise do not immunize the City under section 815.2 of the California Government Code. *Hall*, 510 F. App'x at 612 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921-

11

1    22 (9th Cir. 2001)).

2          B.      <u>Fourth Cause of Action: Municipal Liability</u>

3          The fourth cause of action is a Section 1983 claim against the City for violation of decedent's civil rights. (Dkt. No. 32 ¶¶ 64-70.) The City moves to dismiss this claim on the grounds that Plaintiff has failed to allege facts that show any constitutional violation by Walnut Creek police officers or any pattern, policy, or custom of the City amounting to deliberate indifference.

      To state a claim for municipal liability under Section 1983 for a violation of constitutional rights, a plaintiff must allege facts showing (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997); *see also AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) ("[P]laintiffs must establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.") (citations omitted). There can be no municipal liability without an underlying constitutional violation. *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

      The FAC alleges that decedent was deprived of his "constitutional right to life" and Plaintiff of his "constitutional right and familial relationship with his son" when Walnut Creek police officers "used excessive and unnecessary force" during the decedent's arrest and "failed to identify and address [decedent's] deteriorating mental health" and "failed to adequately communicate" that condition to staff at the Martinez Detention Center. (Dkt. No. 32 ¶¶ 67-68.) In his opposition, Plaintiff clarifies that he is alleging violations of the Fourth and Fourteenth Amendments. (Dkt. No. 39 at 8.) While the FAC nowhere identifies the Fourth and Fourteenth Amendments as the predicate constitutional violation for the municipal liability claims (*see* Dkt. No. 32 ¶¶ 64-70), the Court will construe the claims as such.

      The excessive force claim is analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 294 (1989); *accord Young v. Cnty. of*

*Los Angeles*, 655 F.3d 1156, 1161 (9th Cir. 2011). To state an excessive force claim, a plaintiff must allege facts showing that the officer's conduct was "objectively unreasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397 (internal quotation marks and citation omitted). In determining whether an officer's conduct is objectively unreasonable, courts must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). Here, Plaintiff has not pleaded sufficient facts to support his excessive force claim. In fact, the FAC does not include any facts shedding light on the circumstances of the decedent's arrest or the level of force used aside from the allegation that the decedent "attempted to evade arrest" and resisted arrest "but was ultimately apprehended" and the conclusory allegation that excessive and unreasonable force was used. (Dkt. No. 32 ¶ 19.) In his opposition, Plaintiff insists that he "adequately alleges the circumstances of the arrest" enough to state a claim, but Plaintiff cites no authority to support his position. (Dkt. No. 39 at 7-8.) Indeed, the FAC falls far short of including the types of facts necessary to give rise to a plausible excessive force claim.

The same is true of Plaintiff's claim that the arresting officers violated the Fourteenth Amendment by failing to "address [the decedent's] well-being" (Dkt. No. 39 at 8)—*i.e.*, to address and communicate to jail officials the decedent's deteriorating mental health. (Dkt. No. 32 ¶ 67.) Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment[,]" *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citation omitted), but the same standard applies. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241-42 (9th Cir. 2010) (holding that the Eighth Amendment's deliberate indifference standard applies to pretrial detainees' Fourteenth Amendment rights). The test for "deliberate indifference" consists of two parts: the plaintiff must show (1) a "serious medical need"; and (2) that the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

2006). "Examples of serious medical needs include the existence of an injury that a reasonable doctor or patient would find important or worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). Deliberate indifference requires that a defendant be subjectively aware of the serious medical need and fail to adequately respond to that need. *See Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1082 (9th Cir. 2013); *see also Farmer v. Brennan*, 511 U.S. 835, 837 (1994) (noting that a plaintiff must plead that the defendant was aware of facts from which one could infer a substantial risk of an objectively serious medical need, and that defendant actually drew that inference but did not act on it).

Here, the FAC fails to allege facts sufficient to establish either prong of a deliberate indifference to medical needs claim. First, aside from the vague allegation that the decedent's mental health condition was "deteriorating," there are no facts alleged from which such an inference could be drawn. There are no facts pertaining to how the decedent acted during the arrest or booking, whether he showed signs of having a serious mental health condition requiring immediate medical treatment, whether he requested medical attention for his mental health condition, or any other facts that might give rise to a plausible inference that the decedent had an objectively serious medical need. Likewise, the FAC fails to allege facts showing that the Walnut Creek police officers had a subjective awareness of the decedent's serious medical need. In fact, the FAC appears to be at odds with the core of a deliberate indifference claim: while pleading deliberate indifference to medical needs requires allegations that the officer actually becomes aware that the detainee has a serious medical condition, *Farmer*, 511 U.S. at 837, here the FAC alleges that the officers "failed to identify" the decedent's mental health problem. (Dkt. No. 32 ¶ 67.) Absent such facts, there is nothing unconstitutional about the officer's failure to provide mental health treatment or warn officials at the Martinez Detention Facility of the need to do so. Thus, the FAC fails to allege facts sufficient to support a plausible Fourteenth Amendment violation for deliberate indifference to a serious medical need.

In short, the FAC fails to allege a violation of either the Fourth or Fourteenth Amendments

or any other constitutional or federal right. Although Plaintiff has identified a number of City policies, they are not actionable in the absence of a cognizable constitutional violation. And because Plaintiff has failed to adequately allege a predicate constitutional violation, he fails to state a claim for municipal liability against the City. The claim is therefore dismissed.

### C.   Seventh Cause of Action: General Negligence

The seventh cause of action is a general negligence claim against all Defendants, including the City. (Dkt. No. 32 ¶¶ 82-91.) Plaintiff alleges that Defendants, including the City, "negligently, carelessly and unskillfully cared for, attended, handled, controlled, and failed to supervise, monitor and attend to [decedent] and/or battered and injured him and/or failed to refer him to mental health providers and/or carelessly failed to detect and monitor decedent's deteriorating condition." (Dkt. No. 32 ¶ 84.) Plaintiff further alleges that the City is liable for negligence for failing to supervise and train its subordinates to maintain proper supervision, classification, and staffing. (*Id.*)   The City contends that this claim must be dismissed because the FAC fails to adequately allege compliance with the CTCA's presentment requirement and otherwise fails to state a claim for negligence. (Dkt. No. 33 at 18-19.)

As discussed above in the context of Plaintiff's wrongful death cause of action, the FAC fails to allege sufficient facts—specifically, regarding when he submitted his claim and when the City denied it—to plausibly establish compliance with the claim presentment requirements of the CTCA. Plaintiff's general negligence claim against the City is therefore subject to dismissal.

But even apart from the exhaustion problem, the FAC otherwise fails to state a claim for general negligence against the City for the same reasons as the negligent wrongful death claim. Specifically, to the extent that Plaintiff seeks to hold the City directly liable, Plaintiff has failed to identify a statutory basis for doing so; any claim of the City's direct liability is therefore dismissed. As for a claim for the City's vicarious liability for its employees' negligence, Plaintiff has not alleged facts from which the Court can draw a plausible inference that any of the Walnut Creek officers were negligent in exercising force in their arrest of decedent, or in their failure to address decedent's mental health issues. The negligence claim against the City is therefore dismissed.

1  D.  Ninth Cause of Action: Violation of California Government Code § 845.6

Plaintiff's ninth cause of action arises under California Government Code Section 845.6, which provides in relevant part that:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting with the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care[.]

Cal. Gov't Code § 845.6 (emphasis added). "[T]o state a claim under [Section] 845.6, a [plaintiff] must establish three elements: (1) that the public employee knew of or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett*, 439 F.3d at 1099 (citation omitted); *Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013), *review denied* (May 2013). Liability under this code provision is "limited to serious and obvious medical conditions requiring immediate care." *Id.* (citation omitted); *see also Lucas v. Cnty. of Los Angeles*, 47 Cal. App. 4th 277, 287-88 (1996); *Frary v. Cnty. of Marin*, --- F. Supp. 3d ----, No. 12-cv-03928-MEJ, 2015 WL 858776, at *19 (N.D. Cal. Feb. 25, 2015) (noting that "California courts have narrowly interpreted [S]ection 845.6 to create [only] limited liability").

This claim fails for the same reason that Plaintiff's municipal liability claim based on deliberate indifference to medical care did: there are no factual allegations in the FAC from which the Court can draw a plausible inference that the Walnut Creek police officers knew or had reason to know of the decedent's need for immediate medical care. As the FAC does not state a claim for liability for the officers under Section 845.6 or any other statutory basis, the City's liability is likewise barred. *See* Cal. Gov't Code § 844.6; *see, e.g.*, *Frary v. Cnty. of Marin*, No. C 12-3928 MEJ, 2012 WL 6218196, at *12 (N.D. Cal. Dec. 13, 2012) (citation omitted). Plaintiff's Section 845.6 claim against the City is therefore dismissed.

E.  Request for Attorneys' Fees under § 1988 for State Torts

Lastly, the City Defendants move to strike the request for attorneys' fees pursuant to 42 U.S.C. § 1988 from the third and seventh state-law causes of action. Under Rule 12(f), the "court

16

may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A motion to strike "should be denied unless it can be shown that [the challenged matter] could have no possible bearing on the issues in the litigation. *Buick v. World Savings Bank*, 565 F. Supp. 2d 1152, 1159 (E.D. Cal. 2008). "Rule 12(f) does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) (citation omitted). Here, the City moves to strike the request for attorneys' fees concluding that such relief is precluded as a matter of law, which appears to run afoul of the limits of Rule 12(f) as set forth in *Whittlestone*. 618 F.3d at 971. However, in light of the holding in *Whittlestone*, "courts sometimes construe such deficient motions to strike as motions to dismiss and analyze them accordingly[.]" *Rhodes v. Placer Cnty.*, No. 2:09-cv-00489 MCE KJN PS, 2011 WL 1302240, at *20 (E.D. Cal. Mar. 31, 2011); *see, e.g.*, *id.* at *22 (construing motion to strike claim for Section 1988 attorneys' fees in state law claims as motion to dismiss); *Angel v. Golden Valley Transp., LLC*, No. 10-cv-890 LJO DLB, 2011 WL 201465, at *2 (E.D. Cal. Jan. 20, 2011) (construing motion to strike claim for unavailable statutory penalties as a motion to dismiss).

Section 1988 of the Federal Civil Rights Act provides for an award of reasonable attorneys' fees to the prevailing party in civil rights cases brought under one of a number of enumerated federal statutes. *See* 42 U.S.C. § 1988; *see Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). "[S]ome courts have interpreted the Federal Civil Rights Act to provide for an award of attorneys' fees upon successful pendent state law claims even where a federal constitutional claim ultimately fails." *Rhodes*, 2011 WL 1302240, at *22 (citations omitted); *see, e.g.*, *Maher v. Gagne*, 448 U.S. 122, 132 (1980) (clarifying that attorneys' fees under Section 1988 are available in cases "in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim"). Moreover, the Ninth Circuit has held that when a plaintiff in a civil rights action prevails on a pendent state law claim that shares a common nucleus of operative facts with a federal claim, the court may still award attorneys' fees under Section 1988. *See Carreras v. City of Anaheim*, 768 F.2d 1039, 1050 (9th Cir. 1985), *abrogated on other grounds by Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal. 4th 352 (2000). However, where "there has

been a decision adverse to plaintiff on the [S]ection 1983 claim, [S]ection 1988 does not authorize the award of attorney's fees" on successful pendent state law claims. *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990). Because there are circumstances in which an award of Section 1988 fees may still be appropriate for Plaintiff's state law claims, the Court declines to strike or dismiss the fee requests from the fourth or seventh causes of action.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion to dismiss. The Section 1983 claims against the Walnut Creek Police Department are dismissed with prejudice. Plaintiff shall have leave to file a Second Amended Complaint ("SAC") by September 16, 2015 to amend the claims against the City. Plaintiff is cautioned, however, that such claims should only be made if Plaintiff can, in good faith and consistent with Federal Rule of Civil Procedure 11, make such allegations with sufficient detail. If Plaintiff chooses not to amend the claims against the City Defendants by that date, the City Defendants will be dismissed from this action with prejudice. As the County Defendants have already answered the FAC, if Plaintiff chooses to file a SAC the Court will deem the County Defendants to have constructively answered.

The case management conference scheduled for September 17, 2015 is continued to October 1, 2015 at 1:30 p.m.

This Order terminates Docket. No. 33.

**IT IS SO ORDERED.**

Dated: September 2, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge